## WALSH ET AL. v. HASTINGS.

1. BROKERS' COMMISSIONS.
The defendants having accepted the purchase price and procured a conveyance of the lands to the purchaser produced by the plaintiff, who had been employed to negotiate a sale thereof, are *prima facie* liable under the contract to pay the commissions, whether they owned the property sold or were merely acting in the premises for others.

2. SAME.
In the absence of an agreement to the contrary, when property is placed with a broker for sale and he succeeds in consummating a sale or

in procuring a purchaser ready and willing to buy upon the agreed terms, he has earned his commissions, and may maintain an action therefor.

3. PUBLIC LANDS—ILLEGAL CONTRACTS—COMMISSIONS.

It is not unlawful to furnish a claimant of coal lands with money to procure title from the government. The prohibition is against acquiring title for the benefit of others, and to deprive a broker of compensation for procuring a purchaser of such lands where this element appears, it must be further shown that he was aware of the fact at the time, or had sufficient notice to put him upon inquiry.

*Appeal from the District Court of Las Animas County.*

THE plaintiff, Alonzo Hastings, in his complaint alleges:

That between the first day of March, 1888, and the first day of January, 1889, the plaintiff, at the special instance and request of the defendants, performed labor and services, as broker and agent of defendants, in negotiating the sale of certain coal lands, "the property of said defendants," situate in the county of Las Animas and state of Colorado.

It is further alleged that the services so rendered were worth the sum of $2,500, and that no part of said sum has been paid.

The defendant Walsh appeared and filed a general denial. The defendant Allen filed an answer containing a specific denial of each allegation in the complaint. It also contained a further defense, in which it is alleged that the defendants applied to the plaintiff to find a purchaser for an undivided one half interest in certain coal lands situate in Las Animas county; that at the time the defendants had no title to said lands, but had merely filed thereon under the laws of the United States, and that these facts were well known to the plaintiff at the time he undertook to sell said lands, as well as at the time the sale was consummated.

Each and every allegation of this second defense is put in issue by the replication. Upon these issues the cause was tried to a jury, and a verdict returned in favor of plaintiff for $1,475.

The evidence discloses that a sale was in fact made of a

one half interest in the property, the consideration being an advancement of $32,000 used in the construction of a branch of the Denver, Texas and Fort Worth Railroad to the property, and the further sum of $20.00 per acre to the United States for the purchase of 440 acres of coal land. The evidence is conflicting upon the question of notice on the part of the plaintiff that a portion of the money so advanced was to be used in the purchase of the land from the government. Upon this question the jury was given the following, among other instructions: "If * * * the plaintiff knew or had good reasons to know that the moneys to be procured by him were to be used in whole or in part to obtain the land described in the contract between Walsh and Allen on the one part and Chappell on the other part, in the manner described in said contract, then in that case the plaintiff cannot recover for any services rendered and your verdict will be for the defendants. Such knowledge on the part of the plaintiff must appear from a preponderance of the evidence adduced herein."

Judgment having been rendered upon the verdict, the defendants bring the case here by appeal.

Messrs. NORTHCUTT & FRANKS, Messrs. JOHN & MC-KEOUGH and Mr. L. WALKER, for appellants.

Mr. CALDWELL YEAMAN, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

There are three assignments of error relied upon to procure a reversal of the judgment of the court below.

1. The first is predicated upon the action of the district court in overruling defendants' motion for a nonsuit, based upon the ground of a material variance between the allegations in the complaint and the evidence introduced in support of the same by plaintiff. The variance relied upon grows out of the allegation to the effect that the coal lands

with reference to which the services of plaintiff were rendered are alleged to have been "the property of said defendants," while the proof at the trial shows that said lands never had been the property of the defendants, but that the title was in the United States, and that parties other than the defendants held claim to the same under the coal land laws of the United States.

The variance relied upon is entirely immaterial. The essential averments of the complaint are: That plaintiff, at the instance and request of the defendants, performed labor and services as broker and agent in negotiating the sale of certain coal lands; that his services in that behalf were valuable. Plaintiff, by his witnesses, shows that he was employed by the defendants to sell certain coal lands situate in Las Animas county, that he did procure a customer for said lands in the person of Delos A. Chappell, and that by plaintiff's efforts a sale was consummated between the defendants and the purchaser thus found, of these lands. It also appears that the defendants obtained the benefit of this sale, and of the purchase money.

Upon the case as made by the witnesses for the plaintiff at the time the motion for a nonsuit was interposed, it appeared that plaintiff had fully performed the conditions imposed upon him by his contract with the defendants. The plaintiff testified that he supposed the lands belonged to the defendants, and he was not called upon to offer further proof as to the title. The defendants having accepted the purchase price, and procured a conveyance of the lands to the purchaser produced and introduced by plaintiff, their liability under the contract was established, at least *prima facie*, whether they in fact owned the property sold, or were merely acting in the premises for others. *Levy v. Spencer*, 18 Colo. 532; *Hallack et al. v. Hinckley*, 19 Colo. 38.

2. Error is based upon the refusal to give the following instructions requested by the defendants:

"*Fourth.* The burden of proof that the defendant, Walsh, employed the plaintiff as his agent or factor, is upon the

plaintiff, and if such employment was so indefinite and uncertain that the minds of plaintiff and Walsh were not together upon a particular act which plaintiff was to perform, then plaintiff cannot recover on his alleged contract, although he may have performed other acts at the request of defendants. If the jury believe that the contract between plaintiff and defendant Walsh empowered the providing of some one to furnish money to procure a title from the United States to the land in question, and that in performance of such agreement the plaintiff was instrumental in getting Chappell to enter into the contract in evidence, then they must find for the defendant."

In support of this assignment of error it is urged in part that, to enable plaintiff to recover, there must have been such mutuality of agreement that upon the failure of performance by plaintiff he would have been liable to defendants in an action for damages. This proposition finds no support in reason or authority. When property is placed with a broker for sale, in the absence of a special agreement to the contrary, the broker is not bound to consummate a sale or procure a customer ready and willing to purchase upon the terms agreed upon, but when he does succeed in doing either, his commission is earned and he may maintain an action for the same. *Hallack et al. v. Hinckley, supra.*

The instruction prayed was properly refused for other reasons: It does not require the jury to believe from the evidence. It is not warranted by the evidence, as the testimony of the defendants admits a definite employment.

That part of the instruction in which it is declared illegal to furnish a claimant of coal lands with money to procure a title from the government does not state the law correctly. The thing prohibited is the procuration of title for the benefit of others, and to deprive a broker of compensation where this element appears, it must be further shown that he was aware of the fact at the time, or had sufficient notice to put him upon inquiry.

By the instructions given by the court the jury were fully

and correctly advised as to the law in all these particulars. The contract entered into between Chappell and the defendants was without doubt unlawful, as by its terms Chappell was to have an undivided one half interest in the lands after title should be procured. But this furnishes no reason why two out of the three confessedly implicated in the fraud should be rewarded by withholding commissions earned by an innocent party.

3. The fourth instruction given reads as follows:

"*Fourth.* The jury are instructed that the consideration for the sale to Chappell of the one half interest in lands described in contract was half of the $32,000 invested in the construction of the railroad to the mines, and the loan of $16,000 made to Walsh and Allen by Chappell, and should the jury find for plaintiff, they will allow him such usual and ordinary commissions as are paid for making sales of coal lands, where the consideration of same is $16,000, and add to the sums thus found the usual and ordinary commissions paid for services in securing a loan of $16,000. Should they find for plaintiff, their verdict should be for this aggregate sum."

The court was in error in assuming that $16,000 was the amount of the loan negotiated by the plaintiffs for the defendants. The uncontradicted evidence is to the effect that the loan was for the sum only of $14,800. Of this amount, $8,800 was advanced to the land department in payment of 440 acres of land at $20.00 per acre, and $6,000 direct to the defendants. Therefore, the plaintiff, under the charge, was allowed commissions upon $1,200 in excess of the amount of the loan actually procured by him. The evidence in this case as to the amount properly chargeable as commissions for procuring loans of the character under consideration varies from a minimum of one per cent to a maximum of three and one half per cent. Assuming that the jury awarded plaintiff the highest rate permissible under the evidence, to wit, three and one half per cent, upon the excess of $1,200, the judgment is excessive to the amount of $42.00.

By the remission of this sum of $42.00, any possible prejudice that may have resulted to the defendants from the error in the fourth instruction given will be removed. Plaintiff having filed in this court a *remittitur* relinquishing this amount, the judgment will therefore be affirmed as to the remainder. The costs in this court to be taxed to appellee.

*Affirmed.*